LENART v RAGSDALE

Docket No. 72597. Submitted November 20, 1985, at Detroit.—Decided
    February 3, 1986. Leave to appeal applied for.

Phil and Kate Lenart brought in Wayne Circuit Court an action
    to foreclose a land contract against Velma L. Ragsdale. The
    land contract had been excuted on May 18, 1979, with plaintiffs
    as vendors and Mary Ann Gorecki as vendee. The following
    day, Gorecki assigned her interest in the land contract to
    Ragsdale. The land contract provided for interest at the rate of
    7.5 percent for periods when the vendee was not in default and
    at a rate of 8 percent whenever the vendee was in default.
    Based on defendant's failure to make payments for the months
    of November and December of 1982 and January and February
    of 1983, plaintiffs, pursuant to the land contract, accelerated
    the contract, making the balance of $14,463.22 due, and
    brought the action to foreclose the land contract. Defendant
    raised the affirmative defense of usury and filed counterclaims
    based on a claim of usury. Plaintiffs moved for summary
    judgment of foreclosure on the basis that there was no genuine
    issue of disputed fact. Defendant responded that summary
    judgment was improper because there was a genuine issue of
    material fact relative to whether she was in arrears at the time
    plaintiffs' complaint was filed since the provision allowing an
    increase in the interest rate upon default was usurious and a
    genuine issue of material fact as to whether plaintiffs had
    breached the contract by refusing to accept tendered direct
    payments from the Department of Social Services on defen-

REFERENCES

Am Jur 2d, Appeal and Error §§ 761, 762.

Am Jur 2d, Interest and Usury §§ 167, 238, 270, 291.

Am Jur 2d, Summary Judgment §§ 21 et seq.

Validity and construction of provision (escalator clause) in land
    contract or mortgage that rate of interest payable shall increase
    if legal rate is raised. 60 ALR3d 473.

Right to voluntary dismissal of civil action as effected by opponent's
    motion for summary judgment, judgment on the pleadings, or
    directed verdict. 36 ALR3d 1113.

Borrower's initiation of, or fraud contributing to, usurious transac-
    tion as affecting rights on remedies of the parties. 16 ALR3d 510.

dant's behalf. The trial court, Michael J. Connor, J., held that
the defense of usury was not available to defendant because she
was not a party to the original contract, that a 1977 amend-
ment to the land contract cured any violation of the usury
statute which may have resulted from the original land con-
tract, that the version of the usury statute applicable to this
land contract did not prohibit the variable interest rate provi-
sion, and that any usury defense which defendant might have
been entitled to assert was waived by her failure to raise that
defense in the numerous prior proceedings between the parties.
The trial court granted the motion for summary judgment and
ordered foreclosure. The property was sold at a foreclosure sale.
Defendant appeals by leave granted. *Held:*

1. The question of the validity of defendant's usury defense
was not rendered moot by the judicial sale of the subject
property and its subsequent purchase by third parties, since
defendant remains adversely affected in that she still faces a
deficiency judgment.

2. There were disputed questions of material fact with re-
spect to the propriety of plaintiffs' rejection of the payments
tendered by the Department of Social Services and defendant's
default status in view of that rejection.

3. This land contract is controlled by the usury statute as
amended by 1971 PA 94. That amendment made a variable
interest rate provision as was found in this land contract
unenforceable and usurious.

4. To the extent that interest was collected under the 8
percent clause, the amount of interest collected under the 8
percent clause which is in excess of that which would have
been collected under the 7.5 percent interest clause is to be
applied to the principal. On remand, the trial court shall
determine whether, after applying any usurious interest pay-
ment to the principal, the defendant's default status would
have been affected.

5. The 1977 amendment to the land contract which provided
for the escrowing of taxes and insurance did not constitute a
reexecution of the land contract such that the provisions of the
land contract would be controlled by the terms of the usury
statute as it existed in 1977.

6. Defendant was not estopped from raising the defense of
usury in this action.

Remanded.

1. APPEAL — MOOT QUESTIONS.
An issue is not moot if the action complained of will continue to

adversely affect in some collateral way the party raising the issue.

2. MOTIONS AND ORDERS — SUMMARY JUDGMENT.

Summary judgment on the basis that there is no genuine issue of material fact should be granted only where the moving party is entitled to judgment as a matter of law; while the trial court may consider pleadings, affidavits and depositions of the non-moving party, the court should not make findings of fact, should give the benefit of any reasonable doubt to the nonmoving party and should be satisfied that the nonmoving party's claim is so deficient that it cannot under any circumstances be supported at trial (GCR 1963, 117.2[3], now MCR 2.116[C][10]).

3. ACTIONS — PARTIES — USURY — ASSIGNEES — PRINCIPALS — UNDISCLOSED PRINCIPALS.

An assignee of a contract may not assert the defense of usury in a suit based on the contract, since the defense of usury is personal and not available to assignees; however, an undisclosed principal may raise on his own behalf the defense of usury arising out of a contract entered into on his behalf by his agent absent a statute to the contrary, since an undisclosed principal is treated as a party to any contract entered into on his behalf by his agent.

4. VENDOR AND PURCHASER — LAND CONTRACTS — USURY.

Land contracts executed after August 11, 1969, but before August 16, 1971, are subject to the provisions of the usury law as amended by 1971 PA 94; accordingly, any provision in a land contract executed between those dates which provides that the rate of interest initially effective may be increased is unenforceable (MCL 438.31c; MSA 19.15[1c], as amended by 1971 PA 94).

5. USURY — VENDOR AND PURCHASER — INTEREST — ATTORNEY FEES — COURT COSTS.

A purchaser who enters into a contract which provides for a usurious rate of interest can avail himself of the usury statute if the seller seeks to enforce the contract, can have all of the interest previously paid applied against any outstanding principal debt, and can recover his attorney fees and court costs from the seller; if, however, the purchaser has voluntarily satisfied the entire obligation, or at least an amount over the principal amount, the seller is entitled to retain the usurious interest paid, the rationale being that since the purchaser voluntarily paid the excess amount, he has waived his usury defense as to that amount (MCL 438.32; MSA 19.15[2]).

*Edward A. Simon,* for plaintiffs.

*Wayne County Neighborhood Legal Services, Inc* (by *John Forczak),* for defendant.

Before: WAHLS, P.J., and R. B. BURNS and M. E. DODGE,* JJ.

R. B. BURNS, J. Defendant appeals from a Wayne County Circuit Court decision granting plaintiffs' motion for summary judgment of foreclosure on a land contract. The land contract was executed on May 18, 1970, by plaintiffs as vendors and Mary Ann Gorecki as the vendee. The following day the contract was assigned by Gorecki to defendant, with the approval of the Lenarts (defendant maintains that she was an undisclosed principal and Gorecki was her agent).

On February 22, 1983, plaintiffs filed a complaint to foreclose on the land contract based on defendant's failure to make the required monthly payments during the months of November 1982, December 1982, January 1983, and February 1983. Pursuant to paragraph 3(g) of the land contract, plaintiffs accelerated the contract, making the balance due $14,463.22.

After defendant filed an answer, affirmative defenses and counterclaims, plaintiffs moved for summary judgment of foreclosure under GCR 1963, 117.2(3), now MCR 2.116(C)(10). Defendant responded that summary judgment was improper since genuine issues of material fact existed as to: (1) whether she was in arrears at the time the complaint was filed, since the provision in the land contract allowing for an increase in the interest rate upon the default of the purchaser was usurious, and (2) whether plaintiffs had breached the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

contract in 1979 when they refused to accept direct payments from the Department of Social Services (DSS) which had been tendered on defendant's behalf.

The trial court ruled in favor of plaintiffs on the alternate grounds that: (1) the usury defense was not available to defendant since she was at best an undisclosed principal and not a party to the original contract; (2) the 1977 amendment to the land contract cured any defect under the usury statute; (3) the statutory amendment which prohibits an increase in the initially effective interest rate is not applicable to the instant case, even if the usury defense is otherwise applicable; and (4) defendant's failure to raise the usury defense until 13 years after the execution of the agreement, despite numerous opportunities to do so in prior actions, estops her from raising the defense in this proceeding.

Our first consideration is plaintiffs' claim that the issues involved in this case have been rendered moot by the judicial sale of the subject property and its subsequent purchase by third parties. We believe that the rule that an issue is not moot if the action complained of will continue to adversely affect the party in some collateral way is applicable to this case. *Swinehart v Secretary of State*, 27 Mich App 318; 183 NW2d 397 (1970). Although the property in the instant case has been sold via a judicial sale, defendant is still faced with a deficiency judgment. Furthermore, the foreclosure judgment may adversely affect defendant's credit rating. Therefore, we conclude that this case is not moot.

We turn our attention first to the question of whether there was a material issue of fact. Summary judgment under GCR 1963, 117.2(3) should only be granted when there is no genuine issue as

to any material fact and the moving party is entitled to judgment as a matter of law. *Spencer v Ford Motor Co,* 141 Mich App 356; 367 NW2d 393 (1985); *Pauley v Hall,* 124 Mich App 255; 335 NW2d 197 (1983). In ruling on such a motion, the trial court may consider the pleadings, affidavits and depositions of the opposing party; however, such review should not result in the substitution of a trial by affidavit and deposition for a trial by jury. The trial court should not make findings of fact. *Reeder v Hammond,* 125 Mich App 223; 336 NW2d 3 (1983). Courts are typically liberal in determining that a factual issue exists. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). In making its determination, a court should give the benefit of any reasonable doubt to the nonmoving party and should be satisfied that the nonmovant's claim cannot be supported at trial because there exists some deficiency which cannot be overcome. *Id.*

In the instant case, defendant contends that she was not in arrears at the time the land contract was accelerated and contests the plaintiffs' computation of the monies owed under the contract. It appears to us that there are at least two disputed issues of material fact which render summary judgment inappropriate.

Firstly, in 1979 the DSS tendered payment to plaintiffs to cover an arrearage that had accrued at that time. Plaintiffs refused to accept the payment, indicating that they would not accept payments from the DSS, but only from defendant herself. A fuller development of facts may determine that had plaintiffs accepted this tendered payment, along with the payments made by defendant since 1979, defendant would not have been in default at the time of the foreclosure action. Accordingly, the question of the propriety of plain-

tiffs' rejection of the tendered payments and defendant's default status in view of that rejection is in material dispute.

Secondly, defendant raises a usury defense. Assuming that a usury defense is available,[1] there exists a material issue of fact concerning whether defendant was an assignee or an undisclosed principal. If defendant is an assignee, she may not avail herself of a usury defense since such a defense is personal and not available to asignees. See *Schmidt v Gaukler,* 156 Mich 243; 120 NW 746 (1909); *Barney v Tontine Surety Co,* 131 Mich 192; 91 NW 140 (1902). However, under Michigan law, an undisclosed principal may sue on his own behalf for the breach of a contract entered into on his behalf by his agent or for the breach of a legal duty related to that contract and may claim the benefits of such contract. *Socomet, Inc v Detroit,* 33 Mich App 626; 190 NW2d 551 (1971). Since an undisclosed principal is treated as a party to the contract with respect to the obligations and benefits under the contract, it follows that the principal would be entitled to raise the defense of usury absent a statute to the contrary.

For these reasons, we conclude that there existed disputed issues of material fact. Accordingly, the trial court erred in granting summary judgment.

Although our conclusion on the summary judgment issue requires reversal, we nevertheless discuss the availability of the usury defense since the question will undoubtedly resurface below. The land contract in this case provided for interest at the rate of 7.5% while defendant was not in default and at 8.0% whenever defendant was in default. Defendant argues that this interest escala-

---

[1] We discuss the availability of the usury defense *infra.*

tion provision is usurious under MCL 438.31c; MSA 19.15(1c).

The analysis of the usury issue is muddied by the fact that, following the execution of the land contract in this case, the applicable usury statute was amended several times, with varying degrees of retroactivity. The land contract in this case was executed on May 18, 1970. At that time, MCL 438.31c(2); MSA 19.15(1c)(2) provided in pertinent part as follows:

"For the period ending on December 31, 1970 it shall be lawful for the parties to a conventional home loan mortgage or land contract to agree in writing for the payment of any rate of interest. * * * A provision in any note, mortgage, contract or other evidence of indebtedness, heretofore or hereafter made, that the rate of interest initially effective may be increased for any reason is unenforceable in any court in this state." See 1969 PA 305 (immediate effect, approved August 12, 1969).

This section was thereafter amended by 1970 PA 75 (immediate effect, approved July 16, 1970). Still not satisfied by the statute, the Legislature again amended the section by 1971 PA 94 (immediate effect, approved August 16, 1971). After that amendment, MCL 438.31c; MSA 19.15(1c) provided in pertinent part as follows:

"(2) For the period ending on December 31, 1973 it is lawful for the parties to any note, bond or other evidence of indebtedness, executed after August 11, 1969, the bona fide primary security for which is a first lien against real property, or the parties to any land contract, to agree in writing for the payment of any rate of interest, but no such note, mortgage, contract or other evidence of indebtedness shall provide that the rate of interest initially effective may be increased for any reason whatsoever. * * *

* * *

"(5) The provisions of subsection 2 shall apply only to loans made by lenders approved as a mortgagee under the national housing act or regulated by the state, or by a federal agency, who are authorized by state or federal law to make such loans and mortgage loans and land contracts between natural persons."

For the reasons to be explained below, we believe that this version, created by 1971 PA 94, is the one to be applied to the case at bar.[2]

In order to further refine this statute, the Legislature amended it a second time in 1971. 1971 PA 228 (immediate effect, approved January 3, 1972). This act did not affect subsection 2, but did alter subsection 5 and added a subsection 6. The latter two subsections then read as follows:

"(5) The provisions of subsection (2) shall apply only to loans made by lenders approved as a mortgagee under the national housing act or regulated by the state, or by a federal agency, who are authorized by state or federal law to make such loans.

"(6) Notwithstanding the provisions of subsection (5), leaders or vendors not qualified to make loans under subsection (5) may make, or may have made mortgage loans and land contracts specified in subsection (2) on or after August 16, 1971, which mortgage loans and land contracts provide for a rate of interest not to exceed 11% per annum * * *."

The effect of 1971 PA 228 was to remove "land contracts between natural persons" from the purview of subsection 5, and thus from the nonescalation clause of subsection 2, and to provide an interest rate limit for land contracts involving

---

[2] Although this amendment was adopted after the execution of the land contract in this case, the language of subsection 2 clearly indicates that the amendment is to apply to all land contracts executed after August 11, 1969.

"unqualified lenders". The question remains, however: Which land contracts fall within 1971 PA 228? Since subsection 6 provides an interest limit for land contracts made "on or after August 16, 1971", we conclude that 1971 PA 228 only affects those land contracts executed on or after that date. See *Campbell v Gawart,* 46 Mich App 529, 533; 208 NW2d 607 (1973).

In reaching our decision, we distinguish the case at bar from the case relied upon by plaintiffs, *Patel v Holland,* 114 Mich App 340; 319 NW2d 553 (1982). The majority in *Patel* held that the nonescalation of interest provision of subsection 2 of the statute does not apply to land contracts between natural persons. However, the land contract involved in *Patel* was executed in 1974, substantially after August 16, 1971. Under the view we take in the case at bar, *Patel* is limited to land contracts executed on or after August 16, 1971.[3] Accordingly, *Patel* is not applicable to the instant case.[4]

To recapitulate, we hold today that land contracts executed after August 11, 1969, but prior to August 16, 1971, are subject to the provisions of MCL 438.31c; MSA 19.15(1c) as amended by 1971 PA 94. Land contracts executed on or after August 16, 1971, fall within the provisions of 1971 PA 228.[5]

Since the land contract in the case at bar was executed on May 18, 1970, it is subject to the rule against escalation of interest clauses. Accordingly, the provision of the land contract calling for an escalation of interest to 8% while the contract is

---

[3] We believe that this limitation is consistent with the *Patel* decision and that the *Patel* Court recognized this limitation.

[4] Because we find *Patel* to be inapplicable to the case at bar, we need not determine whether the majority in *Patel* or the dissent by Judge (now Justice) RILEY presents the better view.

[5] Subject, in both cases, of course, to any subsequent amendments we have not considered in this case.

in default is unenforceable. However, this leaves the question of the remedy available to defendant. In *Osinski v Yowell,* 135 Mich App 279, 287-288; 354 NW2d 318 (1984), this Court stated:

"Where a lender/seller seeks to enforce a usurious contract, the borrower/buyer can avail himself of the statute and have all of the interest he previously paid applied against any outstanding principal debt. *Waldorf v Zinberg,* 106 Mich App 159, 164; 307 NW2d 749 (1981), citing *Michigan Mobile Homeowners Ass'n v Bank of the Commonwealth,* 56 Mich App 206, 212-213, 216; 223 NW2d 725 (1974). See also *McKenna v Wilson,* 280 Mich 227, 231-232; 273 NW 457 (1937). If the borrower/buyer has voluntarily satisfied the entire obligation, or at least an amount over the principal amount, the lender/seller is entitled to retain the usurious interest paid. *Waldorf, supra,* p 165; *Michigan Mobile, supra,* p 213. The rationale is that since the borrower/buyer voluntarily paid the excess amount, he has waived his usury defense as to that amount. *Michigan Mobile, supra,* pp 213-214." See also *Allan v M & S Mortgage Co,* 138 Mich App 28; 359 NW2d 238 (1984).

Since the 8% interest clause was improper, plaintiffs were entitled only to 7.5% interest, even when defendant was in default. To the extent that interest was collected under the 8% clause, the amount of interest collected under the 8% clause which is in excess of that which would have been collected under the 7.5% clause should have been applied to principal. On remand, the trial court shall make the appropriate calculations. We leave it to the trial court to make the initial determination of whether this affects⁻ defendant's default status.

Before concluding, we wish to address two remaining theories relied upon by the trial court in the usury analysis. The trial court ruled that a 1977 amendment to the land contract cured any

usury defect. We disagree. The amendment provided for the escrowing of taxes and insurance. In all other respects, the land contract was unchanged. This was not a sufficient reexecution of the land contract for it to be considered a post-August 16, 1971, land contract. Thus, our usury analysis remains unchanged.

The trial court also ruled that defendant was estopped from raising the usury defense by her failure to do so in prior actions. We disagree. There is no indication that plaintiffs relied to their detriment on defendant's failure to raise the usury defense in the prior proceedings. Accordingly, we find the doctrine of estoppel inapplicable to this case.

For these reasons, we conclude that there were material disputes of facts and that, therefore, the trial court erred in granting summary judgment in favor of plaintiffs. The case is remanded to the trial court for further proceedings consistent with this opinion.[6]

Remanded. We do not retain jurisdiction. Costs to defendant.

---

[6] On remand, the trial court shall also consider defendant's counterclaims.